Case 5:25-cv-00186   Document 25   Filed 12/19/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
December 19, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **ONISS SIOMARA VARGAS ISTAMO,** | § § § | |
| Petitioner, | § | |
| v. | § § | CIVIL ACTION NO. 5:25-CV-186 |
| **ORLANDO PEREZ, ET AL.,** | § § | |
| Respondents. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Oniss Siomara Vargas Istamo's Emergency Petition for a Writ of Habeas Corpus, (Dkt. No. 1), and Respondents' Response to Petitioner's Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. No. 12).[1] Vargas Istamo's petition for a writ of habeas corpus alleges that her detention in federal immigration custody is unconstitutional. (Dkt. No. 1). The Court held a hearing on December 16, 2025. (Min. Entry for Dec. 16, 2025). The primary issue before the Court is whether there is a significant likelihood that Vargas Istamo's removal from the United States will occur in the reasonably foreseeable future. For the reasons discussed below, the motion for summary judgment will be **DENIED**, and the petition will be **GRANTED in part and STAYED in part**.

## I. BACKGROUND

Vargas Istamo is a 20-year-old Colombian national currently detained in federal custody at the Laredo Processing Center. (Dkt. No. 1-2 at 2).[2] She is not a citizen or legal

---

[1] Respondents' motion identifies the Federal Respondents (Vergara, Noem, and Bondi) as the real parties in interest in this case as they "make[] the custodial decisions regarding aliens detained in immigration custody under Title 8 of the United States Code." (Dkt. No. 12 at 2 n.1). Respondents do not respond on behalf of Warden Perez because he is not a federal employee. (*Id.*). The Court will refer to the Federal Respondents as Respondents.

[2] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

resident of any country other than Colombia. (*Id.*). She has been detained in immigration custody since she entered the country in September of 2024. (*Id.*). Vargas Istamo first entered the United States on or about July 3, 2024, when she entered without inspection near Otay Mesa, California. (*Id.* at 2).[3] She was removed on August 11, 2024, following expedited removal proceedings. (*Id.*; Dkt. Nos. 12-1, 12-3, 12-4). She re-entered the United States without inspection on or about September 10, 2024, near Otay Mesa, California. (Dkt. No. 12-2 at 2). She was again placed in expedited removal proceedings, but on October 6, 2024, an Immigration Judge (IJ) determined that she had credible fear of removal to Colombia. (*Id.*). The next day, a notice to appear was issued, charging her as inadmissible for being present without being admitted or paroled into the United States and not possessing a valid entry document. (*Id.*). She remained in detention while waiting for her individual hearing. (*See* Dkt. No. 1-2 at 2).

At the final hearing of her removal proceedings on March 17, 2025, Vargas Istamo was ordered removed to Colombia and simultaneously granted Withholding of Removal and Deferral of Removal under the Convention Against Torture (CAT). (Dkt. No. 1-1 at 2–4). At the hearing, both parties waived appeal, and the order of removal became final that same day. (*Id.* at 5; 8 C.F.R. § 1241.1(b)). According to Vargas Istamo's declaration, the IJ told her that she would likely be released from custody within a week. (Dkt. No. 1-2 at 2). However, a few days later, she was transferred to a detention center in Louisiana. (*Id.*). At that detention center, a deportation officer told her that she was going to be removed. (*Id.*). She told the officer that she had been granted protection under CAT, but

---

[3] As an attachment to their motion for summary judgment, Respondents included a declaration from Alfredo Gonzalez, Jr., a Supervisory Detention and Deportation Officer familiar with Vargas Istamo's case. (Dkt. No. 12-2). Vargas Istamo objects to Officer Gonzalez's declaration as incompetent summary judgment evidence. (Dkt. No. 13 at 10 n.1). She argues that an unsworn declaration may only be considered as summary judgment if the declaration states that the statements are made "under penalty of perjury" and verified as "true and correct." (*Id.*) (citing 28 U.S.C. § 1746 and *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)). Officer Gonzalez's affidavit does not verify that his statements are "true and correct." (Dkt. No. 12-2). In evaluating the declaration as summary judgment evidence, the Court finds that it is not competent summary judgment evidence under the legal standard for unsworn declarations, and the objection is sustained. 28 U.S.C. § 1746; *Nissho-Iwai Am. Corp.*, 845 F.2d at 1306 (5th Cir. 1988); *see also Murphy v. Beaumont*, No. 1:22-CV-135, 2024 WL 3957247, at *2 (E.D. Tex. Aug. 24, 2024) (citation modified) ("An unsworn declaration, however, that fails to indicate that the statement is both 'true and correct' and given under 'penalty of perjury' cannot serve as an affidavit, and is subject to a motion to strike."). However, the Court will not strike the declaration because, even considering the evidence, Respondents motion fails for reasons stated below.

he told her to stop contacting him because she did not have proof that she had been granted relief. (*Id.*).

A week later, she was transferred to an airport. (*Id.*). At the airport, she asked the immigration officer why she was being removed despite her protection from removal under CAT. (*Id.*). He verified her Alien Number and confirmed that she should not be removed. (*Id.*). After this, she was transferred to the Laredo Processing Center, where she remains detained. (*Id.*). At the Laredo Processing Center, a deportation officer told her that the law changed, and instead of being released, she would either stay detained or be removed to a third country. (*Id.*). She was also told that if she didn't agree to be removed to a third country, her CAT relief would be taken away and she would be removed to Colombia. (*Id.*). Vargas Istamo has not been notified of any country of removal. (*Id.*).[4]

On July 1, 2025, U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) submitted a form to the government of Costa Rica, requesting its acceptance of Vargas Istamo. (Dkt. No. 12-2 at 2). On August 25, 2025, ICE served Vargas Istamo with its decision to continue detention, citing that ICE had reason to believe that she will be removed in the reasonably foreseeable future. (*Id.* at 2–3; Dkt. No. 12-5). On October 24, 2025, Vargas Istamo was served the 180-day post-order custody review, which again recommended her continued detention. (*Id.* at 3).

On October 20, 2025, Vargas Istamo filed the instant petition. (Dkt. No. 1). Vargas Istamo's petition asserts three claims for relief. (*Id.* at 14). First, she claims that her detention is indefinite, and that it violates the Immigration and Nationality Act (INA). (*Id.*). Second, she claims that her indefinite detention violates the due process clause. (*Id.* at 14–15). Finally, she claims that her removal to an undisclosed third country would violate the due process clause. (*Id.* at 15). She asks the Court to grant her declaratory and injunctive relief. (*Id.*). Respondents filed a motion for summary judgment, asking the Court to find that they are entitled to judgment as a matter of law and deny Vargas Istamo's petition. (Dkt. No. 12 at 10).

---

[4] Vargas Istamo's declaration is dated October 9, 2025, but it was also confirmed at the hearing that she has not been notified of a country for removal because one has not yet been identified.

According to Alfredo Gonzalez, Jr., a Supervisory Detention and Deportation Officer familiar with Vargas Istamo's case, there was no indication that Costa Rica would refuse to issue a travel document for Vargas Istamo as of November 5, 2025. (Dkt. No. 12-2 at 3). He concluded that her removal was significantly likely to occur in the reasonably foreseeable future. (*Id.*). At the hearing on December 16, 2025, Respondents' counsel provided a status update on requests made to countries to accept Vargas Istamo, with said information being incorporated into an advisory subsequently filed with the Court. (Dkt. No. 24). As of December 15, ERO has communicated with three countries regarding Vargas Istamo. (*Id.* at 1–2). The Costa Rican government was sent a request in July of 2025 and has not responded. (*Id.* at 1). The Honduran government was sent a request on November 5, 2025, and has not responded. (*Id.* at 2). The government of Belize was sent a request on November 5, 2025, and has rejected the request. (*Id.*). As of the date of this Order, there is no evidence that any country has communicated that they will accept Vargas Istamo's removal.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, the Court must view the facts in the light most favorable to the nonmoving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019). Once a party has properly moved for summary judgment under Rule 56, the non-movant must demonstrate which "specific facts" show that there is a genuine dispute. *Celotex*, 477 U.S. at 324. A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the Court must construe all facts and draw all inferences in the light most favorable to the non-movant. *Id.* at 255. However, the presence of a mere scintilla of evidence is not sufficient to overcome a motion for summary judgment. *Id.* at 252.

### B. 28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

### III. DISCUSSION

As a preliminary matter, the Court will not consider Vargas Istamo's third-country removal claim because it is premature. At the hearing, counsel for Vargas Istamo acknowledged that the claim is premature at this stage, so the Court will **STAY** her third-country removal claim for disposition at a later date.[5]

Two claims remain in her petition, both asserting that she is entitled to release because she is indefinitely detained. (Dkt. No. 1 at 14). First, the Court will examine its jurisdiction to hear these claims. Second, the Court will analyze Vargas Istamo's detention and likelihood of removability in the reasonably foreseeable future under *Zadvydas*. Ultimately, the Court will grant Vargas Istamo's petition and order her release after finding that she is indefinitely detained.

### A. The Court Has Jurisdiction to Hear These Claims

In their motion for summary judgment, Respondents challenge the Court's jurisdiction to hear Vargas Istamo's due process claims. (Dkt. No. 12 at 7). At the hearing, Respondents clarified that their position is that all of her claims are "inextricably intertwined with ICE's unreviewable authority to execute a removal order." (*Id.*). Respondents cite two cases to support their argument that the Court lacks jurisdiction, relying on *C.R.L. v. Dickerson*, No. 4:25-CV-175, 2025 WL 1800209 (M.D. Ga. June 30,

---

[5] At the hearing, the Court asked the parties about the relevance of the ongoing class action in *D.V.D. v. Dep't of Homeland Sec.* 778 F. Supp. 3d 355 (D. Mass. 2025). Vargas Istamo responded that the indefinite-detention claims are unrelated to the class action because that claim was not presented there. Respondents took no position on the effect of *D.V.D.* The Court determines that, as Vargas Istamo argues, the class action has no effect on the Court's consideration of her indefinite-detention claims.

2025) and *Diaz Turcios v. Oddo*, 3:25-CV-83, 2025 WL 1904384 (W.D. Pa. July 10, 2025). Petitioner counters that the Court does have jurisdiction. She contends that the Court's jurisdiction to hear prolonged detention issues in habeas petitions is well established, citing *Oyelude*, 125 F. App'x at 546, and *Zadvydas*, 533 U.S. at 678.

The Court finds that it does have jurisdiction to hear Vargas Istamo's indefinite-detention claims. First, in both cases Respondents cite, the district courts there evaluate their jurisdiction to hear claims related to the process due before a third-country removal. *C.R.L.*, 2025 WL 1800209, at *2–3; *Diaz Turcios*, 2025 WL 1904384, at *5.[6] Neither of these cases address the Court's jurisdiction to hear detention claims, which are the central claims before the Court in the instant case. *See C.R.L.*, 2025 WL 1800209, at *1 n.1; *Diaz Turcios*, 2025 WL 1904384, at *2. Second, the Supreme Court has held that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688. For these reasons, the Court finds that it has jurisdiction to consider Vargas Istamo's detention claims.

### B. Vargas Istamo's Detention Is Indefinite

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). As the Court explained, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

In *Zadvydas*, the Supreme Court explained that "[w]hen an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-

---

[6] A third-country removal is defined by Respondent Noem as: "the removal of aliens with final orders of removal pursuant to sections 240, 241(a)(5), or 238(b) of the Immigration and Nationality Act (INA) to countries other than those designated for removal in those removal orders." (Dkt. No. 12-7 at 1).

day statutory 'removal period,' during which time the alien normally is held in custody." 533 U.S. at 682. Inadmissible noncitizens or those with certain criminal convictions may be detained beyond the removal period, 8 U.S.C. § 1231(a)(6), but the Court held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States," and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

The Court established a "6-month presumption" of reasonableness following the issuance of a removal order. *Id.* at 701. After the six-month period of "presumptively reasonable" detention ends, a petitioner seeking release from detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) (denying a *Zadvydas* claim where petitioner offers "nothing beyond conclusory statements"). Once a petitioner meets their burden, the burden shifts to the respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, Vargas Istamo's post-removal-order detention began, for purposes of the *Zadvydas* analysis, on March 17, 2025, when Vargas Istamo's order of removal became final. (Dkt. No. 1-1 at 5; 8 C.F.R. § 1241.1(b)).[7] Accordingly, Vargas Istamo has now been detained after a final order of removal for nine months. Thus, the six-month period of "presumptively reasonable" detention under *Zadvydas* has ended. Vargas Istamo must next show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

### 1. Vargas Istamo Meets Her Burden

Vargas Istamo has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. First, she alleges that her relief under CAT prevents her removal to Colombia and makes her removal less reasonably foreseeable. (Dkt. No. 1 at 8). Second, she alleges, and Respondents confirm, that no country has been identified for her removal. (*Id.*). Respondents argue that Vargas

---

[7] At the hearing, Vargas Istamo asserted that her post-removal-order detention began on March 17, 2025, because that is the day that her order of removal became final. Respondents agree that March 17, 2025, is the day that her removal order became final.

Istamo fails to meet her burden because "she has not demonstrated that her removal is unlikely." (Dkt. No. 12 at 6).

In the Fifth Circuit, a petitioner must show more than conclusory statements to establish good reason. *Andrade*, 459 F.3d at 543–44. Other district courts provide helpful persuasive authority in considering whether a petitioner meets this burden. For example, in *Trejo v. Warden of ERO El Paso East Montana*, the court found that Trejo met his burden by alleging that he received deferral of removal to El Salvador, his only country of citizenship, and "that ICE has not identified a third country that will accept him." No. 25-CV-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025). In another case, *Baltodano v. Bondi*, the petitioner met his burden by showing that he had been granted deferral of removal to Nicaragua, that he had no ties to any other country, and that travel documents had not been secured for any third country. No. CV-25-1958, 2025 WL 3484769, at *4 (W.D. Wash. Dec. 4, 2025). Other courts have found that the expiration of the presumptively reasonable six-month period is enough to meet the burden. *Iakubov v. Figueroa*, No. CV-25-3187, 2025 WL 2640218, at *2 (D. Ariz. Sep. 15, 2025); *Pham v. Bondi*, No. 2:25-CV-1835, 2025 WL 3122884, at *1 (W.D. Wash. Nov. 7, 2025).

Here, the Court finds that Vargas Istamo presents sufficient evidence to meet her burden. Her only country of citizenship is Colombia, and she has no other legal residency status in other countries. (Dkt. No. 1-2 at 2). She cannot be removed to Colombia because the Immigration Court found that she was entitled to withholding of removal and deferral of removal under CAT. (Dkt. No. 1-1 at 2). Vargas Istamo has not been notified of a third country for removal. (Dkt. No. 1-2 at 2). Respondents acknowledge that no other country has agreed to accept Vargas Istamo, with the request to Costa Rica being outstanding since July 1, with no response from that country. Each of these facts supports her assertion and go beyond conclusory statements, that she has good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and she has met her burden to establish good reason.

### 2. Respondents Fail to Meet Their Burden

Because Vargas Istamo has shown good reason, the burden then shifts to Respondents to provide evidence sufficient to rebut Vargas Istamo's showing. Respondents argue that they have rebutted Vargas Istamo's showing because "ERO is

actively taking steps to remove Petitioner by seeking third country removal to Costa Rica" and ERO "has reason to believe that Vargas Istamo will be removed in the reasonably foreseeable future." (Dkt. No. 12 at 7).

The extent of the evidence presented by Respondents shows that ERO has sent three inquiries to possible countries of removal in the nine months since Vargas Istamo was ordered removed. (*See* Dkt. No. 24). Over five months have passed since the first inquiry was sent to Costa Rica, and there has been no response. (*Id.*). Respondents have not shown evidence that they are actively communicating with Costa Rica to receive travel documents to effectuate Vargas Istamo's removal. The next two inquiries were sent to Honduras and Belize on November 5, 2025, nearly eight months after Vargas Istamo was ordered removed. (*Id.*). Belize has rejected ERO's request to accept Vargas Istamo, and Honduras has not responded. (*Id.*).

To rebut a showing of good reason, Respondents must "respond with evidence sufficient to rebut [a petitioner's] showing." *Zadvydas*, 533 U.S. at 701. District courts in this circuit have held that this burden cannot be met with "pending requests for travel documents, alone." *Trejo*, 2025 WL 2992187, at *5 (collecting cases). In *Trejo*, the petitioner was detained for the execution of a removal order on March 27 of this year, and ERO sent an inquiry to Mexico on April 10; ERO sent inquiries to two additional countries on May 6. *Id.* at *2. In ruling on the petition in October, the court there found that those facts weighed in favor of Respondents because the requests were made within weeks of the beginning of Trejo's detention, and the detention just nearly exceeded the six-month presumptively reasonable period. *See id.* at *6. Ultimately, the court still found that Respondents could not meet their burden because the evidence was insufficient to rebut Trejo's showing of good reason. *See id.* The Court finds the reasoning in *Trejo* persuasive.

Here, Vargas Istamo's post-removal-order detention has lasted nine months. Vargas Istamo is not able to be removed to Colombia, her only country of citizenship, because she was granted relief under CAT. Unlike in Trejo's case, ERO sent a request to Costa Rica over three months after her post-removal-order detention began in March. Additional requests were made nearly eight months after that detention began when ERO sent requests to Honduras and Belize in November. Belize has rejected the request,

and there is no evidence that Costa Rica or Honduras will accept Vargas Istamo. While Respondents contend that ERO is actively working on Vargas Istamo's removal, the Court finds that these efforts and the evidence presented by Respondents do not rebut Vargas Istamo's showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

### *3. Respondents Are Not Entitled to Judgment as a Matter of Law*

As the movants in a motion for summary judgment, Respondents carry the burden to establish that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. Based on the Court's analysis of the reasonableness of Vargas Istamo's detention set forth above, Respondents are not entitled to judgment as a matter of law. Because Respondents have not rebutted Petitioner's showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the motion for summary judgment is denied.

### *4. Vargas Istamo Is Entitled to Release*

The Court finds that Vargas Istamo's continued detention violates due process because there is no significant likelihood of removal in the reasonably foreseeable future. For that reason, the Court determines that she is entitled to relief on the indefinite detention claims in her habeas corpus petition. Because the Court finds that there is no significant likelihood of removal in the reasonably foreseeable future, Vargas Istamo must be released. *Zadvydas*, 533 U.S. 701 (holding that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). The Court orders her release subject to the conditions set forth below.

### IV. CONCLUSION

For the foregoing reasons, Respondents' Motion for Summary Judgment, (Dkt. No. 12), is **DENIED**. Vargas Istamo's Emergency Petition for a Writ of Habeas Corpus, (Dkt. No. 1), is **GRANTED in part and STAYED in part**.

The Court **ORDERS** Respondents to release Vargas Istamo **by December 22, 2025, at 5:00pm.** Respondents must notify her counsel of the exact time and location of release **no less than two hours** before her release.

The Court **ORDERS** that Vargas Istamo's conditions of release allow her to travel to New Jersey to reside with her family. The Court further **ORDERS** that Vargas Istamo cannot be re-detained without a bond hearing to determine whether there has been a material change in circumstances; and she may only be subject to detention if there is a material change in circumstances. The 10-day notice provision from the Court's October 21 Order, (Dkt. No. 5), **REMAINS** in effect.

No later than **December 23, 2025, at 5:00 p.m.,** the parties shall provide the Court with a status update concerning Vargas Istamo's release. The parties should also notify the Court if additional conditions are added to her release.

It is so **ORDERED**.

**SIGNED** on December 19, 2025.

_____
John A. Kazen
United States District Judge